## MEMPHIS ST. RY. CO. v. PIERCE.

(Circuit Court of Appeals, Sixth Circuit. March 10, 1919.)

### No. 3171.

1. APPEAL AND ERROR ⬉1064(1), 1067—HARMLESS ERROR—INSTRUCTIONS.
    In an action by a negro passenger, wounded in an exchange of shots between the conductor and another negro passenger, giving of instructions on the conductor's right to shoot in self-defense, and the refusal to charge thereon as requested, *held* not error prejudicial to the street railway company.

2. CARRIERS ⬉321(23)—CARRIAGE OF PASSENGERS—ACTION FOR INJURIES—INSTRUCTION.
    In an action against a street railway for the wounding of a negro passenger in a shooting affair between the company's conductor and another negro passenger, instruction *held* not erroneous, in view of all the facts and circumstances, and a discussion between counsel, as telling the jury it was a proven or admitted fact that the conductor came into the car without reason and deliberately started a fight with the negro.

3. TRIAL ⬉295(1)—INSTRUCTIONS—CONSIDERATION AS A WHOLE.
    Instructions must be considered as a whole.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by John P. Pierce against the Memphis Street Railway Company. To review a judgment for plaintiff, defendant brings error. Affirmed.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Sam P. Walker, of Memphis, Tenn., for plaintiff in error.

Milton J. Anderson, of Memphis, Tenn., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge. By law, street railways in Tennessee are required to separate the races by placing white passengers in one end, of a car and colored passengers in the other, passengers of either race being compelled to remain within the half of the car reserved to them, unless it should happen that it had been filled and seats remained in that part of the car set off to passengers of the other race. The result of the regulation is that vacant seats, if any, in either half of the car will be those nearest the center. The car which figures in this case had a side door; it was a trailer in charge of Conductor Bullock, the motorcar being in charge of Conductor Bright. The plaintiff, Pierce, was a colored man seated towards the rear, that being the half assigned to colored passengers. As the car left the center of the city of Memphis, there were many vacant seats in each half, but a white passenger, one Barker, instead of turning to the right and seating himself among the whites, insisted, on taking the first seat to the left of the door in the colored section. The car began to fill with. a preponderance of colored passengers until there was but one seat remaining in the negro end, that beside Barker. A colored woman entered and undertook to sit beside him; her action being met by his strong objection. Thereupon a negro passenger named Knox came up from the rear, giving his seat to the colored woman, and engaged in an altercation with Barker, in which some profanity was used, and which Conductor Bullock could not quell. The latter thereupon gave the ordinary stopping signal for the street which the cars were approaching and opened the door, to order both Knox and Barker from the car. When the train stopped, Conductor Bright came from the front car, and firing began between him and the negro Knox, who was killed. One of Bright's shots hit Pierce, who had no part in the transaction, and it is for injuries by him sustained that this action was brought against the defendant, plaintiff in error here, which seeks to reverse the judgment against it following the verdict.

The assignments in error, four in number, are predicated upon alleged errors of the court relating to the charge to the jury. The first, third, and fourth may be grouped together and thus disposed of, having been argued in that collocation by plaintiff in error's counsel. It is first urged that what the court said to the jury on the subject of self-defense was erroneous under the circumstances of the case, and that the court erred in refusing to give certain requests upon this subject which are the subjects of the third and fourth assignments. The court's charge on self-defense excepted to was as follows:

"In order for you to determine the rights of the parties, it is necessary for the court to instruct you upon the law of justifiable homicide as applicable to the facts in this case. In the first place, the conductor, Bright, would be justified in shooting the negro, John Knox, if he did so in self-defense, and on that subject I charge you as follows:

"If the conductor, Bright, was in real or apparent danger of death or great bodily harm, or honestly believed himself to be in such danger, as evidenced by the facts and circumstances justifying such a belief as they appeared to him, and in acting in good faith under such an apprehension he shot and killed the negro, John Knox, and at this time accidentally wounded John Pierce, the court charges you that this is justifiable homicide; and if you believe that the conductor, Bright, acted in the honest belief and was justified by the circumstances, then you must find for the defendant.

"Considering the self-defense theory, which is relied upon by the defendant, you will first look to all the facts and circumstances in the case, and if from that you believe that the conductor, Bright, came to the trailer car door, and, without more, the passenger, Knox, fired at him, or drew his pistol to fire at him, and the conductor shot at him in self-defense under such circumstances, and the ball missed and struck the plaintiff, then the company would not be liable.

"But, on the other hand, if you believe that there was some controversy between Knox and a white man who was sitting on the seat with him, and that when the car stopped, and the conductor, Bright, came to the door with his pistol, or drew it as he got to the door, and threw it on the negro and told him, 'Hands up,' and the negro arose and drew his pistol and fired, then he was acting in self-defense; the company would be liable, and under such circumstances it would be immaterial whether Knox fired first or the conductor first, because under such conditions he would be the aggressor and could not avail himself of the plea of self-defense."

[1] The requests to charge on this subject were much more extended and discussed various theories alleged to be derived from the evidence and which the jury should examine. We are of the opinion that there was no error prejudicial to the plaintiff in error respecting either the court's charge or the refusal to charge as requested. It is conceded by counsel for plaintiff in error that the court's statement of the general principle of self-defense embodied in the second paragraph of the charge, as quoted above, was correct, but that the court's application of this principle by reference to the facts of the case, as set out in the third paragraph, was erroneous, because it withdrew from the jury, as alleged, a consideration of such movements or demonstrations as the negro Knox may have made which "would show to a reasonably prudent man that he had a pistol and was about to use it." Bright, who killed Knox, and shot Pierce, was not a witness, so that it was left to inference altogether as to what he saw or thought he saw by way of a hostile demonstration on the part of Knox. It is shown in the evidence that Bright stepped into the car with a drawn pistol in his hand, leveled at Knox, coupled with a threatening order. The evidence clearly preponderates that the first hostile demonstration was made by Bright. There is some conflict upon the question, but the best interpretation of the evidence leads to the conclusion that Knox fired first, his bullet striking Bright's money change box and thus saving him from injury, whereupon Bright started a fusillade into the rear of the car, resulting as above stated. The result, in our judgment, is that the request to charge on the subject of self-defense, tendered by the defendant below, so far departed from the actual evidence in the case as to tend to lead the jury into abstruse speculation as to what was in Bright's mind when he fired. In our judgment, the court employed the only concrete application of the general principles of the law of self-defense possible here. We think that to have

given the request of the defendant below might very well have had the result of confusing the jury, and whatever may be said by way of legitimate criticism of the court's charge—we are not suggesting that it is subject to criticism—in view of the whole charge this instruction did not tend to defendant's prejudice. The excerpt from the court's charge on the subject of self-defense, which was excepted to, and which we quote above, was not all the court said on the subject. A paragraph immediately followed directing the jury's attention to the consideration "whether Knox was acting as if he were in the attitude of assaulting any one." The effect of this, with later portions of the charge, alluded to below, was to present to the jury, in a clear way, all of the substance of defendant's request which the state of the evidence justified.

[2] Having first insisted that Bright shot in self-defense, it was further urged in his behalf that the shooting occurred while Knox was attempting a felony. In discussing this question, the court again invited the jury's careful scrutiny of the evidence bearing upon Knox's conduct, in which every right of the defendant below was well safeguarded. In the course of this instruction, the jury's attention was called to the law of Tennessee separating the races, and this part of the charge concludes with this paragraph which is the basis of the remaining assignment of error:

"That is what this trouble seems to have arisen from, but what was its condition, what was the intensity of it at the time the conductor on the front car came back? There is no evidence in that case that explains why he came back, or what induced him to come back. The car bell was rung to stop in the ordinary way for a stop, as the conductor testified there was no call made for any help; and you must apply your good common sense and judgment in determining just what was going on at the time this shot was fired that struck this plaintiff."

It is argued that this was extremely prejudicial, "for the reason that the court, in substance, told the jury that it is a proven or admitted fact that Conductor Bright came back from the motorcar without any reason and deliberately started a fight with the negro John Knox." This criticism does not appeal to the court as valid, nor do we see error in this charge, viewed in relation to all the facts and circumstances of the case, and especially when considered with a subsequent discussion of this subject between counsel for defendant below and the court in the presence of the jury and which was, in fact, part of the instructions. This discussion was as follows:

. "Mr. Walker: I except because the court stated that there was no evidence in the case to cause Bright to return to the trailer car. I submit that there was a question as to whether or not there was sufficient evidence in the case to warrant Bright's return to the trailer car.

"The Court: I don't recall any direct evidence that showed what moved him to leave. It may be inferred from all the evidence in the case. There may be reasonable inference as to why he went back, and the jury may look to all the evidence in determining what caused him to go back. He is not here to speak on that subject."

[3] These considerations dispose of this case. There is no dispute as to the law applicable to this situation. The law of self-defense is well known. We must consider the instructions of the court as a

whole. So regarded, they are found to conform to well-settled law and there is no ground for inference that the jury was misled. We see no fair opportunity to presume that, if the criticisms of plaintiff in error to this charge were met in a new presentation of the same facts to a jury, the verdict might reasonably be otherwise than it was here.

The judgment of the court below, therefore, must be affirmed. Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306; Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489.